Cueia, per Haefek, Ch.
This case ■ has been long under consideration, and though we have bestowed upon it all the attention in our power, it is not without hesitation and difficulty that we have come to a conclusion. The case of Copis v. Middleton, 1 Turn. & Russ. 224, is that which is supposed to have the strongest bearing on the present case. In that case, where a surety had paid off bonds, some before and some after the death of the principal, Lord Eldon held that he could only come on the estate of the principal as a simple contract creditor. The same thing was determined in the ease of Jones v. Davids, 4 Russ. 277. These cases go upon the ground that the bond was extinguished at law by the payment, and that at law, the surety’s demand constituted only a simple contract debt. Admitting the authority of those cases, (though the contrary was decided in the case of Hotham y. Stone, reported in the note to Copis and Middleton, by an authority only inferior to that of Lord Eldon, and though they seem to be against the leaning of our own cases referred to by the chancellor) — is there any thing in the present case to distinguish it from them ? The only circumstance is, that the surety has not in fact paid off the debt, but it is still a subsisting obligation.
It is sufficiently settled that to entitle himself to a remedy against his principal, the surety is not bound first to pay off the *287 debt. It is laid down in Hayes v. Ward, 4 Johns. Ch. C. 190, and in King v. Baldwin, 2 Johns. Ch. C. 562, that a surety may in equity compel the creditor to sue, proffering an indemnity against costs and expenses. It is perhaps more accurately stated by Sir Wm. Grant, 3 Meriv. 579, that the surety may compel the principal to relieve him by paying off the debt. The complainant comes for this purpose, in the present case, and his right to do so is not questioned. The only dispute is as to the rank which the debt shall bear in making the payment.
Lord Eldon in the case of Copis and Middleton, recognizes the equity doctrine, that a surety is entitled to any security which the creditor may have taken from the principal debtor, as if there be a mortgage taken by the creditor, though the debt be paid, yet the title remains in the mortgagee until a reconveyance, and the surety is entitled to the benefit of that. He founds his decision upon the mere technical ground, that, the bond was absolutely extinguished at law by the payment, and the surety made a simple contract creditor, and the matter is put upon the same footing by the Vice-Chancellor in the case of Jones v. Davids, 4 Russ. 277. Lord Eldon says, that if an action were brought upon the bond, it would appear upon oyer of the bond, that the .debt was paid, and no action could be maintained in the name of the obligee. But in this case, the bond is not extinguished at law, but continues a valid subsisting obligation in the hands of the' obligee. It is extinguished in his hands as against the deceased obligor. But it is not the creditor who is seeking relief against the deceased obligor. It is the surety, upon a distinct ground of equity,, seeking to compel the principal to pay off his (the surety) bond debt. This seems to make a distinction between the present case and that of Copis and Middleton; in that case the bond was totally extinguished at law by the surety’s own act; here it was extinguished at law, only as to the deceased obligor, by an event not within the surety’s control. The creditor has no right to resort to the estate of the deceased obligor, but in the event'of the insolvency of the survivor. But as I have said, the surety has a right to compel the principal to pay off that which equity regards as his debt and which is a debt by specialty.
*288 Equity it is said, inclines to put all creditors on a footing of equality, and if the surety had thought proper to pay off the debt, voluntarily making himself a simple contract creditor, he would have no claim on equity to put him in a better situation. But if this were joint and several bond, there is no doubt but that in distributing legal assets, equity would follow the law and preserve the creditors priority. It is not disputed, but that if it were proved that the parties intended to execute a joint and several obligation, but that by a mistake of the person who drew it, it was made joint, equity would relieve against that mistake and put the parties in the same situation, as if it had been made joint and' several.— But upon an examination of the cases, they seem to me to establish a rule of this sort, that if the joint obligation' be created merely by the bond or covenant, where there was ho previous liability, in that case, no relief will be afforded against the estate of the deceased obligor, in the event of the insolvency of the survivor.— But if there was an antecedent debt, to which both parties were liable, as ‘in the case of partners, then the court infers, without direct proof, that the instrument was made joint by mistake, and relieves accordingly, by setting it up as a joint and several bond, and on a still stronger equity it should seem, that where there was an antecedent debt to which the deceased obligor was solely liable, would the court set it up as his several debt, in favor of the obli-gee, where the surviving obligor proves-insolvent.
In Primrose v. Bromley, 1 Atk. 89, the assignees of the bankrupt had entered into a joint covenant to account for what they, or either of them, should receive. This was held a specialty debt against the estate of the deceased assignee. It was said that the words, “or either of them,” must be so construed as to make.it a joint and several' debt, and that they were- trustees in this court. The chancellor states a case previously decided by him, in which, where one party to a joint bond died, he compelled the representative of the deceased to pay pari passu. I presume that both were liable previously to the bond, and if so, the decision would be to establish, that in every such instance, the bond will be regarded as joint and several.
In Simpson v. Vaughan, 2 Atk. 31, a joint bond was given for *289 money loaned to partners. Lord Hardwicke says, “the principal ingredient for the plaintiff is, that it is not a debt in the way of trade, but as an actual loan of a sum of money,- and the debt arises from the contract itself, and if there is any defect in the bond, the court will resort to what was the principal intention of the parties, that they should be severally and jointly bound.” “ It is the lending on one side, and the borrowing on the other, that makes the strength of these cases.” The bond was drawn by one of the partners; Lord Hardwicke acquits him of fraud, but infers, without any express proof, so far as I can perceive, that it was so drawn by mistake.
In Bishop v. Church, 2 Ves. 100, 371, a joint bond was given for money borrowed by two partners. The condition was, “if they, or either of them, should pay,” and it was contended that this should make equity regard it as a joint and several bond.— There was also a question, whether there was not a rebutting equity growing out of the laches of the creditor. Lord Hard-wicke rejected the notion of the conditions making the contract joint, and overruled the other defence. He set up the bond against the deceased obligor, without any proof or suggestion of its being made joint by mistake, and against the heir as well as the executor, on the ground that equity regards the condition of the bond as the agreement of the ancestor, by which the heir is bound.
In Thomas v. Frazer, 3 Ves. 399, two partners gave a joint bond for a partnership debt, and in part for a joint note they had previously given. It was charged by the bill, that the bond was intended to be in the common form of a bond by two persons, and that it was made otherwise by want of skill, or ignorance. The bankrupt survivor admitted that the bond was intended to be in the usual form, but stated that he did-not know the difference between a joint, and a joint and several bond. The chancellor said, the bond would be no better than the note, unless it were made joint and several; the defendant’s was the usual admission. I may observe that the admission does not show that the bond was given otherwise than as the parties intended, and I apprehend that the principal ground of the decision must have been the previous liability of both parties. To the same effect *290 were the cases of Bate v. Hinchell, and Furman v. Grace, reported in a note to the former case.
The principle is explained according to the view I have taken, by Sir War. Grant, the-master of the rolls, in the case of Sumner v. Powell, 2 Meriv. 30, referred to by the chancellor. In that case, where there was no antecedent debt, but the liability was created solely by a joint covenant, made by several, the master of the rolls refused to relieve against the estates of the deceased covenantors, upon the bankruptcy of the survivors. He says, “The question is, whether any other effect can be givfen to this covenant in equity, than it has at law ? It has never been determined that every joint covenant, is in equity, to be considered as the joint and several covenants of each of the covenantors. • In the late case of Devaynes v. Noble, I had occasion to examine the authorities on this subject, and found no such general proposition any where laid down; where the obligation exists only by virtue of the covenants, its extent can be measured only by the words in which it is conceived. A partnership debt has been treated in equity as the several debt of each partner, though at law it is only the joint debt of all. But then all have had the benefit from the money advanced, or the credit given, and the obligation to pay exists, independently of any instrument by which the debt may have been secured; so where a joint bond has, in equity, been considered as several, there has been a credit previously given to the different persons, who have entered into the obligation. It was not the bond that first created the liability to pay. But in this case, the covenant is purely matter of arbitrary convention, growing out of no antecedent liability in all, or any, of the cove-nantors, to do what they have thereby undertaken.”
This agrees with the case of Rawston v. Parr, 4 Russ. 424, 539. Creditors claimed to prove a joint .note against the estate of a deceased surety, the surviving makers and principals being insolvent. The master of the rolls allowed the claim, but his decree was reversed by the chancellor, Lord Lyndhurst. It was argued, that there are two classes of cases in which equity will set up a joint instrument as joint and several — where there was an actual intention to make it joint and several, or where there was *291 an antecedent debt or liability. Here was no antecedent liability of the deceased — and being set up as a debt against the estate of the deceased obligor, -it must’be. set up as a specialty, debt, with all its consequences, so as to give it priority. The matter was fully considered by Lord Rosslyn, in Burn v. Burn, 3 Ves. 573. There was full and explicit proof, that the bond was made joint through ignorance and mistake, where -it was intended to be joint and several, and the question was, whether it should be set up as a specialty, so as to give it priority over simple contract debts. — • The chancellor refers to the cases on the subject and says, that though the point has not been specifically determined, yet he is satisfied that from'the time of Bishop v. Church, it has been understood to be the course of the court, to set up the contract in toto.
In Pierce v. Acton, 2 Ver. 481, where the husband had given a bond for £1000 to his wife, before marriage, and afterwards mortgaged his estate and died, the wife brought a bill to set up the bond and to redeem, it was argued that though it might be set up as an agreement in equity, as to the personal estate, yet it would not do to set it up as a specialty. The Lord Keeper said, the bond, if set up, must be wholly and entirely set up, and not in part only to bind the personal assets and not the real.
And so it seems to me it must be, though equity inclines to equality among creditors, yet in distributing legal assets, it preserves legal priorities. It being assumed that the bond was.made joint,, instead of joint and seyeral, by mistake, the appropriate remedy in equity, would be to reform the instrument and compel the party to give such a bond as was intended to be given, this would give the obligee a priority at law, which equity following the law, would recognize, equity, however, taking jurisdiction, gives complete relief, and will direct the payment of the money. It will direct it, however, as if he had conformed himself to its peculiar province, apd the bond were actually made several, instead of joint. •
Here, the deceased obligor was-alone previously liable, and the surety has at least equal equity, to make it his several debt. He was liable too on a security of as high a nature, as that by which *292 the complainant is now bound — and it may well be questioned, whether the first bond was in any degree affected or extinguished by the giving of the second, and whether it does not still remain a valid and subsisting obligation for the whole debt. The decree of the chancellor is therefore affirmed.
King & Walker, for appellant.
Petigru, for appellee.
Johnson and Dunkxn, Chancellors, concurred.